# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| STEWARD HEALTH CARE | § | Case No. 24-90123 (CML) |
| SYSTEM LLC, *et al.*,[1] | § | |
| | § | (Jointly Administered) |
|          Debtors and Appellees. | § | |

| | | |
|---|---|---|
| THE COMMONWEALTH OF | § | Lead Civil Action No. |
| MASSACHUSETTS, TRACO | § | 4:25-cv-02825 |
| INTERNATIONAL GROUP S. DE | § | |
| R.L., AND DR. MANISHA | § | Consolidated with: |
| PUROHIT, *et al.*, | § | 4:25-cv-02829 |
| | § | 4:25-cv-02901 |
|          Appellant. | § | |

| | | |
|---|---|---|
| THE COMMONWEALTH OF | § | |
| MASSACHUSETTS, | § | Civil Action No. 4:25-cv-03754 |
| | § | |
|          Appellant. | § | |

| | | |
|---|---|---|
| KEVIN M. EPSTEIN, THE UNITED | § | |
| STATES TRUSTEE FOR REGION 7 | § | Civil Action No. 4:25-cv-03755 |
| | § | |
|          Appellant. | § | |

---

[1] A complete list of the 167 debtors in the underlying chapter 11 cases (the "Debtors" and "Appellees") may be obtained at https://restructuring.ra.kroll.com/Steward.

| | | |
|---|---|---|
| TRACO INTERNATIONAL GROUP S. DE R.L., | § § § § | Civil Action No. 4:25-cv-03757 |
| Appellant. | | |

| | | |
|---|---|---|
| DR. MANISHA PUROHIT, *et al.*, | § § § | Civil Action No. 4:25-cv-03830 |
| Appellants. | | |

**REPLY IN SUPPORT OF THE COMMONWEALTH, TRACO, AND PARTICIPANTS' JOINT (I) MOTION TO CONSOLIDATE APPEALS OF THE SETTLEMENT ORDER, SOLICITATION ORDER, DISMISSAL ORDER, AND CONFIRMATION ORDER; AND (II) MOTION TO <u>CERTIFY FOR DIRECT APPEAL</u>**

ii

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ..............................................................1

REPLY .........................................................................................3

   A. Consolidation of Interrelated Appeals Is Appropriate and Promotes
      Judicial Efficiency ...............................................................3

   B. The Proposed Consolidated Appeals Satisfy Each Potential Basis for
      Certification – Though a Single Basis Would Suffice ....................3

     1. The Effective Date Issue Is a Question of Law, Not Fact.........3

     2. There Is No Controlling Law to Provide Guidance to Bankruptcy
       Courts and the Existing Decisions Conflict ..............................5

     3. This Appeal Presents Matters of Public Importance: The Continued
       Ability of Estates to Access Trade Credit Post-Petition ............6

     4. Certification Will Materially Advance the Progress of These
       Proceedings....................................................................9

CONCLUSION................................................................................11

iii

4897-5326-5778

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Ad Hoc Group of Excluded Lenders v. ConvergeOne Holdings, Inc.*,
No. 4:24-cv-02001, ECF No. 54 (S.D. Tex. Sept. 25, 2025) ...............................8

*In re NETtel Corp.*,
No. 00-01771, 2020 WL 2047965 (Bankr. D.D.C. Apr. 28, 2020)......................8

*In re Pac. Lumber Co.*,
584 F.3d 229 (5th Cir. 2009) ............................................................................10

*In re Sears Holdings Corporation*,
No. 18-23538 (Bankr. S.D.N.Y.).........................................................................4

*Mass. Div. of Emp't & Training v. Bos. Reg'l Med. Ctr. (In re Bos. Reg'l Med. Ctr.)*,
291 F.3d 111 (1st Cir. 2002).................................................................................6

*Weber v. United States*,
484 F.3d 154 (2nd Cir. 2007) ............................................................................10

<u>Statutes and Codes</u>

United States Code
   Title 11, Section 503 ...........................................................................................7
   Title 11, Section 507 ...........................................................................................7
   Title 11, Section 1123(a)(4).................................................................................8
   Title 11, Section 1129(a)(9)..................................................................2, 4, 7, 10
   Title 28, Section 158(d)(2).....................................................................2, 3, 9, 11

<u>Other Authorities</u>

Josh Neifeld, Lucas Hammonds, Jess Keller, and Ian Howland, *U.S. Bankruptcy Quarterly Q3 2025: PREPA Restructuring Reset; Haircuts for Some, Protection for Others in Administratively Insolvent Cases; Big Remand in Texas; Constructive Trust Litigation Lessons, Bankruptcy Industry Update*, Octus Intelligence, Inc., Oct. 3, 2025...............................................................................9

4897-5326-5778

TO THE HON. GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE:

On September 25, 2025, Appellees Monica Blacker, Alan J. Carr, and William Transier filed an opposition (the "Opposition") to the *Joint (I) Motion to Consolidate Appeals of the Settlement Order, Solicitation Order, Dismissal Order, and Confirmation Order; and (II) Motion to Certify for Direct Appeal* (the "Motion"). Appellees are the trustee of the Plan Trust, successor in interest to the Debtors, and the members of the Plan Administrator Committee.  On October 1, 2025, the Debtors' Official Committee of Unsecured Creditors joined in the Opposition (the "Joinder").

For their Reply in support of the Motion, Appellants state as follows.[1]

## **PRELIMINARY STATEMENT**

Appellees' only basis for opposing consolidation is the mootness arguments in their motion to dismiss the Settlement Appeals.[2]  But, they are not moot for the reasons stated in the contemporaneously filed opposition to that motion.  Thus, there is no reason not to consolidate the Proposed Consolidated Appeals.  If the Court grants dismissal, it should still consolidate the Confirmation Appeals, which Appellees do not appear to oppose.

---

[1]  Capitalized terms not otherwise defined herein have the meaning set forth in the Motion.

[2]  *Appellees' Motion to Dismiss Appeals as Moot*, Civil Action No. 4:25-cv-02825, ECF No. 22.

Appellees' opposition to certification misinterprets the grounds for certification. This appeal presents a recurring, discrete question of law warranting direct certification to the Fifth Circuit under 28 U.S.C. § 158(d)(2): whether a chapter 11 plan complies with Bankruptcy Code section 1129(a)(9) when it projects a speculative "effective date" years after confirmation—here, at least two years—despite the debtor's uncontested administrative insolvency at confirmation (the "Effective Date Issue").[3] Contrary to Appellees' claims, resolving the Effective Date Issue does not require an analysis of the "complexities of this bankruptcy and the claims and parties involved." Opposition at 3. It is a pure question of law not yet settled by this Circuit but of significant importance.

The Bankruptcy Court shared many of the Appellants' and others' concerns about the Effective Date Issue and its impact on future chapter 11 cases, noting, among other things, the lack of controlling Fifth Circuit precedent and conflicting decisions within the Circuit. In its words, the Effective Date Issue "can go both ways."[4] Because this issue is likely to recur, a determination by the Circuit will provide needed guidance to bankruptcy and district courts. Certification is

---

[3] Other issues, such as feasibility, were raised in the various appeals. If, however, the Fifth Circuit concludes that the establishment of a contingent far-in-the-future effective date is unconfirmable as a matter of law, the Debtors' Plan must fail, rendering the other issues on appeal moot.

[4] *See* Transcript of May 30, 2025 Hearing at 35:9-20, attached to the *Declaration of Hugh M. McDonald in Support of the Motion* (the "McDonald Decl.") as Exhibit 12 [ECF No. 2-1 at 1598 of 1801].

especially warranted because the ruling in this case will undoubtedly affect trade creditors' willingness to extend unsecured post-petition credit to chapter 11 debtors on "normal" trade terms.  This is exactly the type of critical legal question for which Congress intended direct certification under 28 U.S.C. § 158(d)(2).

## **REPLY**

### A. **Consolidation of Interrelated Appeals Is Appropriate and Promotes Judicial Efficiency**

Appellants incorporate their contemporaneously filed opposition to Appellees' motion to dismiss the Settlement Appeals as moot.  If the Settlement Appeals are not dismissed, they should be consolidated with the Confirmation Appeals.  If the Settlement Appeals are dismissed, the Confirmation Appeals should still be consolidated.

### B. **The Proposed Consolidated Appeals Satisfy Each Potential Basis for Certification – Though a Single Basis Would Suffice**

#### 1. *The Effective Date Issue Is a Question of Law, Not Fact*

Appellees argue that because the Bankruptcy Court found, as a matter of fact, that the plan "satisfies the requirements for confirmation, [this appeal] is not appropriate for direct appeal."  Opposition at 7.  That argument misstates the primary issue on appeal.  Resolution of the Effective Date Issue requires only a determination as to whether, as a matter of law, the Bankruptcy Code permits confirmation of a plan of reorganization that contemplates an effective date that will not occur for at

least two years, where the debtor is administratively insolvent at the time of confirmation.

Appellees argue that the Bankruptcy Code does not prescribe when an effective date must occur and that other courts have approved similar plans. Opposition at 8. However, even if some plans have been confirmed with a proposed effective date in the future, that does not mean that those plans complied with section 1129(a)(9), especially where the debtor's administrative insolvency at the time of confirmation is clear. Creeping normalcy is no substitute for compliance with the law.

Appellees point to *Sears*, but *Sears* highlights *why* the Fifth Circuit should certify this appeal and provide guidance on what constitutes an unreasonably deferred future effective date as a matter of law. In *Sears,* three years elapsed between plan confirmation and the effective date. Although plan confirmation was appealed, the appellants voluntarily dismissed the appeal before any opinion was issued, leaving bankruptcy participants with no circuit court guidance on when a plan's effective date must occur as a matter of law but also no live controversy over the extended delay. Without clear direction from the Fifth Circuit, it is likely

4

that hope and prayer plans for insolvent debtors will continue to be confirmed beyond the boundaries of the law.[5]

Appellees' efforts to portray this as a factual dispute should be rejected. Appellants seek a ruling that a two-year delay in a plan's effective date for an insolvent debtor is unconfirmable as a matter of law. Resolving the Effective Date Issue therefore requires only a legal determination and is appropriate for direct appeal.

### 2. There Is No Controlling Law to Provide Guidance to Bankruptcy Courts and the Existing Decisions Conflict

Appellees also argue that there are no "conflicting decisions" requiring resolution. Opposition at 9. That assertion is incorrect and, in any event, should not be the end of the analysis. True, neither the Fifth Circuit nor the Supreme Court has addressed the Effective Date Issue, but conflicting case law exists, as even the Debtors' plan confirmation brief shows. The Debtors identified more than a dozen cases reaching different outcomes on the validity of effective dates occurring months and years after confirmation, and attempted to distinguish cases cited by objecting parties (including Appellants) that rejected significantly extended effective dates on

---

[5] The Bankruptcy Court's imposition of regular status conferences requiring that the Debtors demonstrate they are firmly on the path to an Effective Date underscores their current administrative insolvency and the uncertainty of any Effective Date.

similar facts (including conflicting decisions within the Fifth Circuit).[6]  Indeed, the Bankruptcy Court recognized that both the Effective Date Issue "can go both ways"[7] and there is no binding precedent.  Failing to certify this issue will only allow uncertainty over whether a proposed protracted effective date complies with the law to linger longer than necessary.  The existence of cases on both sides of this issue demonstrates why direct certification is warranted.

### 3.    This Appeal Presents Matters of Public Importance: The Continued Ability of Estates to Access Trade Credit Post-Petition

Certification is also appropriate because the impact that prolonged effective dates will have on future chapter 11 cases presents an issue of public importance.[8]

A core purpose of the Bankruptcy Code is to ensure that, upon the filing of a chapter 11 petition, a debtor can maintain business operations.  To encourage counterparties to extend post-petition unsecured credit on "normal" credit terms, those post-petition creditors' claims receive administrative expense priority treatment and a chapter 11 plan must provide that those claims are paid in full on the

---

[6]  *See Debtors' Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Debtors' Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and Its Affiliated Debtors*, attached to the McDonald Decl. as Exhibit 13 [ECF No. 2-1 at 1713-24 of 1801].

[7]  *See* Transcript of May 30, 2025 Hearing at 35:9-20 [ECF No. 2-1 at 1598 of 1801].

[8]  *See Mass. Div. of Emp't & Training v. Bos. Reg'l Med. Ctr. (In re Bos. Reg'l Med. Ctr.)*, 291 F.3d 111, 124 (1st Cir. 2002) ("The justification for this rule is that the administrative priority is necessary to induce potential contractors to do business with the debtor-in-possession, which in turn is necessary to prevent the business from collapsing entirely with the filing.").

4897-5326-5778

effective date (absent their consent).  *See* 11 U.S.C. §§ 503, 507, 1129(a)(9)(A). Here, while saying that administrative expense claims will be paid on the Effective Date, the Plan pushes the Effective Date out two years to 2027 during which time the Debtors *hope* to obtain sufficient funds to pay those claims.  Many unpaid administrative expense claimants extended credit during 2024 while the Debtors remained operational.  These vendors must now wait three years for payment even if the Plan goes effective as hoped by its proponents.  This delay makes it unlikely that vendors in other cases will agree to provide goods or services if the guarantee of payments provided by the Bankruptcy Code can be undermined by confirming a plan that forces some administrative creditors to wait many years for payment.

A plan that forces post-petition vendors to wait years for payment under a confirmed plan sends a clear and damaging message: no prudent vendor should ever agree to do business with a bankrupt entity, without receiving greater assurance of payment than holding an administrative expense claim and section 1129(a)(9).  Such precedent threatens the viability of the business rehabilitation process codified in chapter 11.

The public policy implications of forcing limited unpaid administrative expense claimants to wait years for payment are exacerbated by the full and timely payment to the Debtors' bankruptcy professionals of their unpaid fees.  Paying professionals for all of their pre-confirmation work (as well as for work during the

prolonged pre-Effective Date period) leaves vendors more vulnerable to a situation where the bankruptcy estate is unable to pay administrative expense claims in full, even at the end of the lengthy pre-effectiveness period.[9] Indeed, as explained by NorthStar Anesthesia, P.A., an administrative expense claimant with a court approved claim for provision of anesthesia services at one of the Debtors' hospitals:

> [I]f post-bankruptcy trade creditors would learn anything from confirmation of a plan that allows bankruptcy professionals full and prompt payment while post-petition trade creditors are forced to depend for payment on uncertain litigation outcomes in a distant, opaque future, it is that they must never do business with bankrupt entities. It is hard to imagine the industry of business rehabilitation – or that of the restructuring professionals dependent on the bankruptcy system – surviving such a lesson.[10]

The Plan's disparate treatment of administrative expense claim holders during an extended pre-effectiveness period is particularly troubling because it arises in the context of administrative insolvency, meaning there is currently insufficient cash to pay all administrative claims in full. Under these circumstances, the message to the

---

[9] Indeed, if it is improper under section 1123(a)(4) of the Bankruptcy Code to treat members of a voting class under a plan differently, *see, e.g., Ad Hoc Group of Excluded Lenders v. ConvergeOne Holdings, Inc.*, No. 4:24-cv-02001, ECF No. 54 (S.D. Tex. Sept. 25, 2025) (holding that a plan's exclusive backstopping opportunity "constituted unequal treatment of members of the same creditor class" in violation of § 1123(a)(4)), then it cannot be consistent with the Bankruptcy Code for claimants who are not classified because their equal treatment is proscribed by the Bankruptcy Code to be treated differently by being forced, without their consent, to take different payment risks under a plan. Post-petition vendors and estate professionals are equally administrative expense creditors. *See In re NETtel Corp.*, No. 00-01771, 2020 WL 2047965, at *3 (Bankr. D.D.C. Apr. 28, 2020) (courts cannot create a superpriority for professionals to the detriment of other administrative expense creditors).

[10] *See Objections of NorthStar Anesthesia, P.A. to Debtors' Joint Chapter 11 Plan of Liquidation* [Bankr. ECF No. 5313 ¶ 7].

market will be clear: because vendors face the risk of delayed payment or nonpayment, they should demand cash on delivery, letters of credit, or other assurances before providing post-petition goods or services.

In effect, the Plan converts unpaid administrative claims into long-term, unsecured obligations that may never be paid, undermining the statutory scheme and sending a damaging message to the market, while providing the Debtors the benefits of a confirmed (if not effective) plan. Because administratively insolvent chapter 11 cases are at an all-time high,[11] this legal question of whether an administratively insolvent debtor can push an effective date far into the future hoping to generate value is an exceptionally important policy issue that merits certification.

### 4.    *Certification Will Materially Advance the Progress of These Proceedings*

Direct certification will significantly aid in the administration of the Debtors' bankruptcy case by providing guidance to the Bankruptcy Court on the propriety of an extended effective date—and to the extent it fails as a matter of law, will allow the parties the ability to explore alternatives or for the cases to be converted to chapter 7 cases. As Federal courts throughout the country have noted, 28 U.S.C. § 158(d)(2)(A) is satisfied if direct certification speeds up litigation or otherwise

---

[11]   Josh Neifeld, Lucas Hammonds, Jess Keller, and Ian Howland, *U.S. Bankruptcy Quarterly Q3 2025: PREPA Restructuring Reset; Haircuts for Some, Protection for Others in Administratively Insolvent Cases; Big Remand in Texas; Constructive Trust Litigation Lessons, Bankruptcy Industry Update*, Octus Intelligence, Inc., Oct. 3, 2025.

makes it less burdensome on the parties and the courts.  Motion at 17.  Certification here would materially advance the progress of these cases.

At the confirmation hearing, the Bankruptcy Court specifically left open the question of conversion to chapter 7 and set status conferences every six months to monitor the Trust's progress in collecting funds and reducing administrative expense and priority claims so those claims can be paid in full.  Confirmation Order [Bankr. ECF No. 5774 at 71-72].  Should the Fifth Circuit find that the Plan's Effective Date violates section 1129(a)(9), overturning the plan's confirmation, the Bankruptcy Court could immediately convert the Debtors' cases to chapter 7[12] or craft alternative relief.  This is not an issue where "percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision."  *Weber v. United States*, 484 F.3d 154, 161 (2nd Cir. 2007).  The Effective Date Issue is a pure legal question requiring no further factual development and, once resolved, could quickly settle the dispute over confirmation.  *See In re Pac. Lumber Co.*, 584 F.3d 229, 241-42 (5th Cir. 2009).

---

[12]  Transcript of July 16, 2025 Hearing at 15:19-20, attached to the McDonald Decl. as Exhibit 11 [ECF No. 2-1 at 1512 of 1801] ("The Court reserves the right to immediately find that the plan cannot go effective sua sponte at the 2026 and 2027 conferences.  The most important conference will be the June 15, 2027 conference.  If the Court finds that the plan cannot go effective, has no hopes of going effective, let's just say in late 2026, the practical matter is that the case will convert right then and there.").

Certification is also warranted because, absent certification, the losing party is virtually certain to appeal to the Fifth Circuit. Any opinion issued by this Court on the Effective Date Issue will not advance this appeal's resolution but will simply delay its final disposition and waste court resources in the interim. Thus, direct review by the Fifth Circuit is warranted under 28 U.S.C. § 158(d)(2)(A)(iii).

## **<u>CONCLUSION</u>**

For the reasons set forth above, the Court should overrule the Objection and consolidate and certify the Proposed Consolidated Appeals for direct appeal.

4897-5326-5778

Dated: October 14, 2025            Respectfully submitted,

**_THE COMMONWEALTH OF_**
**_MASSACHUSETTS_**

By its attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

By: _/s/ Hugh M. McDonald_
Hugh M. McDonald (Bar No. NY2420974)
Special Assistant Attorney General
Andrew M. Troop (Bar No. MA547179)
Special Assistant Attorney General

PILLSBURY WINTHROP SHAW PITTMAN
LLP

Andrew V. Alfano (Bar No. NY5525241)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1000
Fax: 212-858-1500

William D. Wood (Bar No. 21916500)
L. James Dickinson (Bar No. 24105805)
609 Main Street, Suite 2000
Houston, TX 77002
Tel: 713-276-7600
Fax: 713-276-7673

4897-5326-5778

***TRACO INTERNATIONAL GROUP S. DE R.L.***

STEPTOE LLP

By: *<u>/s/ Timothy Walsh</u>*
Timothy Walsh
Michele Jacobson
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 957-3085
Email: twwalsh@steptoe.com
     mjacobson@steptoe.com

13

*DR. MANISHA PUROHIT, ET AL.*

VERRILL DANA LLP

By: */s/ Robert J. Keach*
Robert J. Keach
Lindsay K. Milne
Letson D. Boots
One Portland Square, 10th Floor
Portland, ME 04101
Telephone: (207) 774-4000
Email: rkeach@verrill-law.com
        lmilne@verrill-law.com
        lboots@verrill-law.com

- and -

DIAMOND MCCARTHY, LLP

Allan B. Diamond, Esq.
Christopher D. Johnson, Esq.
909 Fannin Street, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Email: allan.diamond@diamondmccarthy.com
        chris.johnson@diamondmccarthy.com

14

## CERTIFICATE OF COMPLIANCE

I certify that this Reply complies with the type-volume limitation of FED. R. APP. P. 27(d)(2)(C) because it contains 2,597 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

I certify that this Reply also complies with the typeface and style requirements of FED. R. APP. P. 27(d)(1)(E) and 32(a)(5) and (6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

*/s/ Hugh M. McDonald*
Hugh M. McDonald


## CERTIFICATE OF SERVICE

I certify that on October 14, 2025, I caused a copy of the foregoing Reply to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Hugh M. McDonald*
Hugh M. McDonald

15

4897-5326-5778